and we'll call our next case. United States v. Merced, number 09-1844, Mr. Romano and Ms. – is it Arkell or Arkell? I'm pleased to call it. John Romano, United States. I'd like to reserve three minutes for rebuttal. Could you put the microphone up just a bit there so we can hear you? Sorry. Thank you. This appeal – How much time do you wish to reserve? Three minutes. Three minutes. That's fine. This appeal is about the procedural steps that a district court must take when it grants a massive downward variance. Maybe. Or maybe it's just on the merits of the fact. You're going to have to convince at least one person that there was a procedural error here. Yes, Your Honor. Well, there are several procedural errors here. Well, take the strongest one first. Okay. Well, the first one, Your Honor, is I think we could break it up into two parts. On one hand, we have this policy variance and on the other hand, we have everything that came after that. And here, the court certainly issued a policy variance with the career offender guideline. And that policy variance was directly contrary to the policies of both the Congress – Well, that requires us to conclude that because he hadn't yet done or foreshadowed his 3553 analysis, that he was making a firm decision based on some vaguely articulated policy. Isn't it perfectly fair to read the opinion quite differently? To read the opinion as saying, because of my 3553 analysis, about which you will hear more later, I'm not even close to agreeing to the advisory guideline sentence, either the career criminal version or the non-career criminal version, both of which, of course, were much longer than the mandatory minimum. Why isn't that really the better reading of this somewhat casual conversation at the time? He said that, you know, it wasn't going to apply the career offender guideline because of this, you know, policy that it seems to apply in all of its cases. In other words – Those are not the words the district judge used. The district judge really used language suggestive of a personal policy, didn't he? What he said was, I kind of reserve career offender status for violent, significant drug deals and that type of thing. That's a personal sentencing policy. I understand. I was, however, more than quibbling with your language. I think you would be making your position much more clearly if you were stating precisely what the district judge said. Well, the judge said, and I think you just quoted it, I kind of reserve career offender status for significant violent drug deals, that type of thing. Sounds like a personal difference of opinion with the policy that was set up by the Sentencing Commission. Well, it's a policy variance. In other words, to say that he looked just at this individual defendant and that's why he's varying is really not fair because in the context he has a policy, if you don't fit this policy, significant violent drug deals, I won't apply this. And that, if you look at Kimbrough and Spears, that's certainly a policy variance because the defendant falls within the mine run of cases for which the Sentencing Commission intended this guideline to apply. And this district court will not apply it if you don't fall within his own separate policy. Now, so at step one, you had a correct calculation under the career offender guidelines, 188 to 235 months. And then if you didn't have that, if you just had the crack cocaine sentencing guidelines, it would have been somewhere like 110 to 130 some months. Yes, Your Honor. And the court gave 60. Now, I know the 7th and the 11th circuits have said that the career offender provisions are expressly mandated by Congress and the courts are not free to decline to sentence within them based solely on a policy disagreement. But I understand from your briefs, I just want to clarify, that the government is no longer taking this view. Is that correct? The government is not taking that position. It has not taken that position in this case and it no longer takes that position. So you're basically following the 2nd and the 6th circuits, which have said that you can do it. So then what you're saying is, okay, but when you do at step three vary from the guideline calculations, you need to do what? You need to give what? Significantly greater reasoning, among other things, or what else? There has to be. Well, this court has explained in both Leitchock and Levinson, you need a thorough explanation. You need sufficiently compelling reasons. Well, what was missing here? The explanation was a little bit casual, but it had a lot of specifics in it. The prior criminal record was documented. The exact amount of drugs was documented. The prior prison sentences were documented. He talked about five or six different reasons he was relying on, including the fact that he was going to give a greater sentence than this defendant had ever received before. Well, I think you're – Well, what were the critical items that he had to have in there that he omitted? Well, I think, Your Honor, you have to separate some of that out here. We're talking, first of all, about the policy of, I won't apply this career offender guideline, which only gets you down, if you don't apply it, to 110 to 135. So if you just look at that policy, and I think if you look at this court's precedents in Levinson and Leitchock, it gives you a good starting point. A mere statement of – a conclusory statement of personal belief is not sufficient. That's what this was. If you look at the Levinson case – No, no, but you conceded in answer to Judge Ambrose's question that, at most, he had a higher burden when he got to step three and did his 3553 analysis. And then you went on to say, as I heard you, that he didn't meet the higher burden under the elevated 3553 analysis. And then I ask you, well, what was missing? And then you go back to say, well, he had a personal policy. That's not a responsive answer. Well, on the policy, Your Honor, he had to – No, no, on the 3553 elevated standard, what was missing? That's the question. What's your answer? Well, Your Honor, the policy part is a 3553 step three analysis. In other words, he got to step three. He calculated them correctly at step one. There was no departures at step two. At step three, if he's going to vary based on policy, he needs to acknowledge the policy. He needs to discuss the policy. He needs to explain how he came up with his policy. He needs to explain why. And that's absent here. Excuse me? That is absent here. That is absent here. And if you look at the Leitchock case, in Leitchock – But does that mean he didn't rely on any personal policy, that he was simply relying on the specific factors set out in 3553A? No, Your Honor, because he doesn't explain how he gets all the way down to 60 months. He throws out the 188 to 235. He does that based on his career offender guideline. He doesn't like it. It doesn't apply here. It doesn't apply because this person's, in effect, doing street crime. Is that what he – that's what he's saying? Well, he's – again, it's a policy variance. Congress doesn't believe that. The Sentencing Commission doesn't believe that. So why does the district clerk get to say that? But Judge Ambrose's question was, that's essentially the reason, if not the express reason, when you read the entire sentencing transcript, that Judge Martini made the determination that he made. He thinks that these types of offenses aren't that serious. But the problem is, that's not what Congress and the Commission think. And if he wants to disagree on that basis, he needs to give us more. Right. So you agree he may disagree. He may disagree with the policy. But if he does so, he has to set out more than what I presume you're suggesting is mere ipsy-dixit here. Exactly. And if you look again, and I'll go back to the Leitchau case, the district court there said, you know, I think that these are psychological crimes, deterrences in the factor that should be at issue. And this court said, no, that's a mere statement of personal belief. If you really believe that, then tell us how you got there. Tell us about the congressional policy. Tell us about the Commission policy. Tell us why. And I think if you distinguish that from the Spears case, the 20 to 1 ratio at Spears, the district court said there – or the Supreme Court said the district court relied on several well-reasoned opinions explaining why 20 to 1 was the proper ratio, and that those opinions relied on the Commission's own work. In other words, there's work there. There's a reason. The court here just came up with something, said it's not going to apply it, and didn't explain why or how it got there. Just threw out the Congress, threw out the sentencing commission in a line. And the court can't do that. It needs to give us more. And then even if you get past that, that only gets you down, as you pointed out, Your Honor, to 110 to 135. How is the court getting all the way down to 60 from there? It needs a fuller explanation. And I would assume the argument is that he didn't give any reason for why he went down. He gave very little reason. I'm not going to say he gave no reason, but he said, you know, this crime isn't that serious. Well, as the court pointed out in Goff, the sentencing guidelines take that into account. If he had kilograms of crack, his guideline range would be much higher than it was. He pointed out some other small, small factors, but never went through the analysis that this court needs, step by step. Let me take you to another issue. In our Goff opinion, we indicated that the district court needs to address arguments emphasized by the parties. Did the government emphasize the risk of sentencing disparities at the sentencing and prior to the sentencing? Well, Your Honor, it was in the brief in two places. And I think there's two points here that the district court completely missed in not discussing 3553 issues. When you say it was in the brief, are you referring to the sentencing memorandum given to the district court? I am, Your Honor. And there were two points raised. First, that it would create an unwarranted disparity with other career offenders. The court didn't mention that at all. And given that the government had, you know, raised that argument, the court has to discuss it if you look at the Sevita case. But did the government put in any factual evidence of what sort of sentences had previously been given to defendants with similar criminal records and similar quantities of drugs? Well, I think, Your Honor, that the government could rely on both that Congress and the Commission said that these types of serious sentences were required or were appropriate in these cases. And if the court wants to vary significantly... Is that a no answer? The government did not put in factual evidence as to what other career offenders were receiving. But again, look at Goff and Leitchock. The court says if you're going to give a significant variance, you must discuss 3553A6 with particular care. The court didn't discuss it at all here. The court didn't discuss the cliffs that would result. Remember, this defendant had 49.1 grams of crack, had 21 criminal history points, and received the same sentence that you or I would receive for doing this with 5 grams of crack. A defendant with slightly more, 50 grams of crack, a first-time offender, would receive double the sentence mandatory. The court didn't discuss that at all either. And you have to look at, again, the Sevita case. The defendant raised an argument, and that was a within-guideline sentence, and this court sent it back and said, look, the court has to discuss this. It was raised. This was an important issue that the court didn't bother to discuss. Do you have, this is, this is not directed to any of the issues you have explicitly raised, but is it the government's view that the district courts, and perhaps, perhaps in the wake of the Sevita case, are increasingly careful about setting out their reasons and meeting requirements for what is referred to as procedural reasonableness? I think that's certainly happened in this case, Your Honor. Well, that's not, again, what I'm asking you. I'm asking you whether out there, there is some tendency on the part of Moore, and what Judge Martini did here in the government's view. Yes, Your Honor, I think that... Because we don't, I'm not saying a government appeal is extremely rare, but we don't see them as a matter of routine, nor is the process routinized as far as the Justice Department is concerned. So I'm just curious about why this particular case involving what would seem to be a street-level, rather small-time dealer, albeit one with a long and pathetic history, why that would evoke the interest that it has. Well, first, the first part of it is, yes, I think we have seen that in this case and other cases, and I think the 28 J letters I sent in last week show that that's happening frequently across the country. I think courts are taking the discretion a little too far, not giving the explanations that are necessary. So your argument, essentially, that there was, procedurally, the court didn't do things right, do we have to deal with anything on the substantive level yet? We're not raising that argument now, Your Honor. This court has explained a preference to having the court send it back, have the district court do it correctly, follow the steps, and at that point, we'll see. The government is hopeful that when the court does apply the steps properly and goes through the analysis, that it will hopefully achieve a higher sentence, but we're not at that stage right now, and we'll evaluate that when the court imposes sentence. Thank you. Thank you, Your Honor. We're back on rebuttal. Ms. Arkell. Thank you. Louise Arkell, along with David Holman from the Office of the Federal Public Defender for Mr. Merced, representing Hector Merced. It appears here that there's a host of procedural issues that come into play, and the easiest one, I'm just working backwards because we'll spend a lot of time on the other ones, but is the 3553A6, the disparity with others. I couldn't find anything, and I mean anything in the record that dealt with that particular factor in 3553A. I think disparity was a concern running through the sentencing in the way the district court dealt with it. But we're an appellate court. We've got to have somebody telling us how this factor weighs against one side or the other, and why the court is either taking this into significant account or is discounting it after having considered it, and I couldn't find anything. The district court did consider that in the sense that it was clearly aware of the career offender range. You may be right, but what's on the record? What can you quote to us that the judge actually said that is directed specifically to this sentence? It acknowledged that it was a substantial variance. It used the word either substantial or significant. It was clearly aware that what it was doing was... I'm talking about sentencing disparities, not the extent of the variance, but the question of how this sentence would compare with other similarly situated defendants. Well, I would say two things. One, it was aware because the government did raise it in its... So the government emphasized it, you would concede that? I would not say it emphasized it because I would say the only argument the government made to emphasize was, give a guideline sentence and look at his criminal history. You can't prevail by saying the judge was aware of something because we can deduce that from the whole hearing transcript. You've got to show some specific statement by the issue. Well, I think this court has been willing to look at the entire transcript as a whole or the sentencing proceeding as a whole. This district court in this case was so careful to acknowledge it had read the party's memoranda. It carefully reviewed the PSR in detail at the beginning of the sentence. It carefully reviewed the sentencing, the calculations under career offender range, without career offender range. It considered the amount. So it was clear of all of the factors... What is on the record as to what other defendants got with this type of criminal history and offense level? The district court certainly didn't compare it to any case like Mr. Merced's. It did note that the statement that Judge Smith, I think you focused on, was that I tend to reserve career offender for. We're going to get to that. That's a policy disagreement. The point is, what else did people get who were in his situation? That's a factor. And it just isn't there. And it would seem that that alone calls for a remand. I disagree. I think this court has been willing to look at the transcript and the proceeding as a whole. All right, but that's a pretty rote recitation of what we do in review. I concede you that. Having said that, as a court, can you point us to anything within that transcript which demonstrates that the district court not only considered sub silentio, the impact of his decision, but discussed explicitly sentencing disparity, which is not the sentence itself, but rather an effect of the sentence? In distinguishing it from cases that do warrant the career offender range, the court was implicitly saying... All right. That puts the rabbit in a hat. I do agree the court never said 3553A6. It never explicitly said... Said what others get. Correct. But the government, I think the rationale, the sufficiency of the rationale has to be reviewed in light of what the government raised. It did not emphasize... Don't you think that while this court considers the sentencing transcript as a whole, that we should require a sentencing judge to articulate with specificity where he or she varies in as extensively, percentage wise, as was done here? The reasons in not only 3553A factors, but the reasons for that variance. I think the district court did explain that here. I don't think the court should set up procedural hurdles like you have to do a checklist. You have to say 3553A6. Kimbrough and Spears, they say when you go outside of the heartland of cases, the normal run of the mill type of cases, and you vary significantly, you've got to give a lot of justification. And then Gall says that when you have an advisory, when you go way outside the guideline range here, you need a lot of justification. So you've got three Supreme Court decisions that say that you have to do that. And for a court to say, I reserve career offender for nonviolent cases where there is significant involvement of drugs and not in effect street crime, I don't know of anything that the guidelines deals with that. And look, the judge can say, I disagree. There's no doubt about it. But our cases make clear that you've got to give a lot of reasoning, more reasoning, so that we can do our function as an appellate court. I think that goes to the sufficiency of the rationale in this case. I think Rita talked about the fact that a case may be conceptually simple. This case is conceptually simple. And yes, Rita gave a within guideline sentence. But just because a sentence is without, beyond the guidelines, doesn't make a case conceptually difficult. The district court did a careful analysis here of the nature of Mr. Brunetti's reasoning. Well, I'll give you an example of where I don't see anything on the record, as your opposing counsel has said. Okay, the court gave a reason why the court did not wish to follow the career offender guidelines in this case. I could see no reason as to why the court did not explain away why it did not follow the crack cocaine guidelines of Mr. Brunetti. I think the court did explain that. It looked at what the range was without career offender, and it was 110 to 137. And the court specifically addressed the crack. It said, I don't believe the ratio that said the 100 to 1, I think that's too much. But I do believe the crack is somewhat more. If I was reading along in this transcript, I could see, okay, the court saying, I'm not going to do 188 to 135, and here's why. And so the next thought is, okay, fine, we'll go down and take a look at 110 to 135. And there's just no discussion. There's none. I think because the district court, at some point, it considered the guideline range, which it's required to do. It calculated. There was no dispute about the range. And then at some point, the court said, I basically am setting aside the guidelines for right now. I am doing a careful 3553A analysis. And while there's been a ton of attention to whether a district court can disagree with guidelines on a policy basis, the more basic thing a court can do is do a 3553 analysis, an independent, reasonable evaluation of 3553. That's the more basic instruction, Dr. Booker. And that's what this court did. Let's look at this from 10,000 feet, and I want you to put yourself in our shoes. There is a great deal of discretion, much more than previously, given to district court judges with respect to their sentencing. And appellate courts are to review for unreasonableness, either procedural unreasonableness or substantive unreasonableness. If you were in our shoes, in order to conduct meaningfully that appellate review for unreasonableness, again, procedurally, because you may still end up winning substantively, how would you say we can have meaningful review? I think because... What do we need? I think what you need, especially with respect to the explanation for the sentence, is think about every audience that the district court is addressing. And does that audience have the information it needs to know what the district court's problem with the range was? And the three of us are telling you, we don't think we have enough. And I encourage... There's only one relevant audience. And as Judge Ambrose has pointed out, the discretion that the district court has is enormous, especially in the way of Tomko. I'm speaking only for myself. It's interesting to me that the government, which clearly, by virtue, by way of its position and nothing I've heard here has dissuaded me from this view, disagreed with the sentence itself. But they chose not, in the wake of Tomko, to raise a challenge to substantive unreasonableness. The entire focus, notwithstanding a few arguments that seem to me to be almost in the nature of an attack on substantive reasonableness, they have chosen to frame their appeal entirely on the basis of procedural unreasonableness. That's all we have to look to. And we need reasons. And you have not even been able to iterate for us any reasons articulated by the district court pointing explicitly to sentencing disparities, for example. I do think... What do we have? I think, again, looking at the transcript as a whole, you have the rationale that Mr. Tomko has sentences of between three and four years in the past. The district court's belief was that a sentence other than career offender range was warranted here. So it's not, did he consider disparity in relation to another defendant? How is the district court's view that a particular bottom line is reasonable enough when he has to step over a clear articulation of policy as embodied by the Sentencing Commission in a career offender enhancement? Keeping in mind that that policy applies to kingpins and street people. I don't think the district court's decision was based on policy here. It was based on 30, I think the court went out of its way to emphasize it was doing a 35-53 day in-house. But all the individual characteristics are the same types of things that are considered day in and day out by courts and also by the Sentencing Commission in saying that this is within the heartland of the, quote, mine run case. Which is, I'm sorry? Go ahead. Which is an important component of the reason we require a rationale. The purpose of the rationale requirement is, with all due respect, not just for the appellate court but also for the Sentencing Commission. Does the Sentencing Commission have the information it needs here to know what the district court's problem was? Ms. Archul, you said a moment ago, I don't think what the district court did here was policy-based or words to that effect. And I will concede, speaking only for myself, you may be absolutely right. I don't know, however, on the face of this transcript, based on what I view as the district court's ipsy-dixit about reserving career offender status for violence, significant drug deals. If I don't know, what should I do? How can we decide? As a reviewing court judge. Well, because I think if you look at the rest of the transcript, the district court, I think you can read this transcript and know that this district court is going to review every person who comes before it, every record of every person it is about to sentence just as carefully as it did so here. It's going to read the memoranda. It's going to go through the PSR in detail. It's going to consider not just the point score but the nature of the offenses. And let's say we agree with you. I have no doubt this court did a very thorough job, but you've got to put on the record why it is that you're going so significantly away from, so much of a variance from what the guidelines say. And again, you can have a policy disagreement. No problem. You can. Don't challenge that. But you've got to tell us why this case, which appears clearly to be within the heartland, which means normally you need a case outside the heartland to vary significantly, normally, that's what you see, why this case is so different. And as I said, there's no analysis given at all as to what others get in this situation. And I repeat, just for the record, you may win ultimately. But for us, it really comes down to Judge Smith's question. We don't have enough here that we can meaningfully look at this and make a decision as to whether this is a reasonable sentence or not. If I can address this one more time, I think there is enough in this record. I think the court looked at the nature of the offenses that Mr. Merced had committed in the past. It did not deem the nature of those offenses sufficient to warrant a guideline sentence. How about the number? As I recall, he had four separate convictions for selling dangerous drugs in the vicinity of a school. And a total of 12 adult convictions, four juvenile convictions, virtually all involving drugs. So when Judge Martini says, well, the qualifying offenses like the current offenses involved relatively small amounts of drugs, not kilograms, etc., it's just there's no calibration here. There's no sense that he's weighing and counter-weighing things that you would think he would have to do in order to justify the final sentence. What if this guy had 100 convictions? Apparently, that would make no difference in the way Judge Martini does the analysis. I disagree. I think the court was very clearly aware of the number. I think that was a tension for the district court. The district court specifically asked the government to address the tension between the nature of the offenses and the number. The district court was concerned about the deterrence factor. But it was unwilling to give him a sentence of the type called for by the career offender provision. And what it wanted to do was give him a sentence significantly long enough to give him a chance to get his life together, which will be followed, I might add, by supervised release for four years. It deemed that sufficient to meet those issues was in tension with the nature of the offenses. The government's response was solely guidelines, guidelines, guidelines. If I were to go to Vegas and place a bet as to whether this judge was aware of all those things, I would bet in your favor. But my bet doesn't mean diddly-squat if there's nothing on the record. And that's the problem we have. I think the record can be read more. I think there's a lot packed in that record. I think the court was abundantly aware of all of those things, not only by the memorandum, but also by the nature of its comments. And I urge you to affirm the sentence. Thank you. Thank you. Mr. Romano? Gee, Mr. Romano, I thought you were just going to say I waived my rebuttal. You stole my line. Your Honor, I would just like to point you to the one case, though, the Owsburn case this Court specifically said, where the record is inadequate, we do not fill in the gaps by searching the record for factors justifying the sentence. This Court should not do that here, and we ask that you vacate the sentence and ask the Court to do this in a procedurally proper way. Thank you. Thank you. Thank you to both counsel for really well-presented arguments. We'll take the matter under advisement and call the last case of today,